Good morning. May it please the Court, my name is Todd Blumenfeld and I represent the Plaintiff and Appellant Cies Bisker in this matter. We're here today on an appeal of a disavowal of claim scope that the District Court found within the scope of the 632 patent. We are of the opinion that the standard required of a disavowal, namely clear, explicit, unambiguous words of manifest exclusion, has not been met by the specification of the 632 patent. And accordingly, we think that the plain and ordinary meaning of the terms should be given. Mr. Blumenfeld, so often cases come before us have a disavowal of claim scope resulting from prosecution, statements of prosecution. Here it's right in the patent where the specification states that ink printed images, which you want to bring in within the definition of photographic, are not a viable alternative for the photographic tiles. If they're not a viable alternative, how can they be the same or included within it? Well, Your Honor, I understand that most of the time we are talking about some back and forth between the patent office that then leads to a disavowal. And this is a situation where the statements are within the specification themselves. However, if you really examine the statements in context, we think it's very clear that the statements are all qualified and they're all very clearly qualified. And accordingly, their scope and their reach and their applicability are limited. The statements in the spec talk about the then pitfalls or disadvantages of using ink printing, but only in certain circumstances. They are talking about ink printing only when you're talking about higher volumes of prints versus low volumes of prints. And what the statements point to, using words like usually and typically, qualifying and not saying all the time. But most importantly, they're talking about under certain conditions when you're talking about volumes of prints. So they are not a viable alternative. The specification also says they're prohibitively expensive and of an inferior quality. Usually people in describing their invention don't use such terms. I would agree with you that usually they probably don't. However, in this case, while they are used, if you really look at it, it does say the photographic tiles. I'm going to look at it. Understandably, but it does say that they are typically used with low volumes. So I believe that those statements are really only talking about in a low volume context. Let's turn to column one, line about 48. As a result, photographic printing is far superior to ink printing. Now, when a sentence begins that way, clearly they're contrasting two different things. Photographic printing and ink printing. So it's kind of hard for me to believe that the word photographic printing should otherwise in the claims be construed to including printing. When you clearly are contrasting two things. Regardless of what purpose you're contrasting them for, whether it's low volume, high quality, whatever else, but when the specification clearly uses the word photographic printing in a manner that is meant to be distinct from ink printing, it becomes difficult to suddenly subsume it later on. Sure, and I see why you would say that. However, the claims that do use the, starting with claim one, that use the terms, they don't say photographic printing processes, they talk about photographic prints. And I know it sounds really similar, so we want to say photographic printing, oh, that's the only way to get photographic prints, but that's not actually the case. And secondly, the second term at issue here, graphic prints of photographic quality, are something different than photographic prints. Well, you'd like to say that, but let's look at claim 21. Claim 21 says, an enlarged graphic print of photographic quality. Now, in theory, if that were the only limitation, it seems that maybe you'd have an argument that graphic print is not the same thing as photographic print, but look at the next limitation, which says said photographic print. Well, if said photographic print is not referring back for antecedent basis to the graphic print you just referred to, then it is completely indefinite because it lacks antecedent basis for anything. So you're kind of damned if you do and damned if you don't here. Either you've got to admit that photographic print is said photographic print, or you've got to admit that your claim is indefinite because you don't have any antecedent basis. Understood. Which one is it? Well, given those choices, I will obviously choose that it is the antecedent basis, and that is actually an issue that we did discuss in claim construction, and that was one of the terms that was defined. However, that's not the subject of the appeal today, but the court did find that that does serve as sufficient antecedent basis, but not because they are the same thing, but because of where they appear in the claims. It is very clearly noticed to someone reading it that that's what it's actually talking about, is the graphic print that is referred to earlier, but not that they are the same thing. Instead, a photographic print is a type of graphic print. A graphic print is any print done by any method, and here the only qualification is that it look like a photograph, that it be of photographic quality. But within the broader universe of graphic prints, photographic print is one of those types, but it is not the only type. You have all sorts of different printing methods, including ink printing, but there's electrostatic printing and lithographic printing and many different ways to print a graphic print, but that is the larger universe, whereas a photographic print is just a piece of that. So, in addition to these statements being qualified with applying to only low-volume situations, they're also not really about the central purpose of the invention. I think you can see when you look at the title and you read the spec, the invention is really about advertising space. It's really about utilizing floor space that wasn't previously utilized, and it's about creating a lifelike simulation to be used to utilize that space. It's not about a printing process. The inventor, she did not invent a new printing process. The invention is not from a printing process nor to a type of printing process. She only discusses it in here because she's required to give the preferred embodiment and to give the best mode, and back then, in a low-volume situation, the best way to do it was to use conventional photographic printing processes, but that's not the only way that you can do it. I think a person of skill in the art, when they read the claims and when they read the specification, would know that, and there's also some discussion in the file history that supports that as well. And lastly, if you do think or you do come to the opinion that photographic prints, the only way to make those is to use conventional printing processes, because of claim differentiation, those are something different than graphic prints, and so to apply that same disavowal to the graphic prints of photographic quality sort of flies in the face of the doctrine of claim differentiation. And so we feel that, with the standard required of a disavowal, that it be clear and unambiguous that that standard is not met, and so therefore we urge that this court instead find the definitions that we propose, which do include ink printing. I will save the rest of your time for the other one. Thank you. Mr. Weaver? Thank you, Your Honors. Good morning. My name is David Weaver, and I will be speaking today on behalf of the defendant's appellees from the decision below. The district court, Your Honors, correctly construed the term graphic print to exclude prints made using ink printing processes and specifically to exclude ink printed images. The district court found this and got to this decision because the court looked at the entire specification, the prosecution history, and concluded appropriately that the patentee clearly, unambiguously, and unmistakably disclaimed ink printing from the scope of the invention. But if the invention is really as broad as we've just been told, what difference does it make how the printing is done? The patentee made it clear, Your Honor, in the specification why it was important and why it made a difference how the print was made. And she specifically said, focusing on the quality of the images that could be reproduced, she said ink printed images simply do not achieve the level of quality that was necessary for her invention. And she was very clear. She said ink printed images are not a viable alternative to the photographic tiles of the present invention. Well, the technology has overtaken that disclaimer, let's call it. Now apparently the quality is adequate. Your Honor, respectfully, there is nothing in the record before this court, either in the intrinsic record or cited to by plaintiffs, that suggests that there has been a change in the quality of ink printing. Ink printing in 1995, at the time of the filing of this application, was a very mature technology. All you have to do is pick up a National Geographic magazine from 1994, going backwards in time, and you will see very high quality images that are printed using ink printing. But that was not of sufficient quality for the inventor. And she made that perfectly clear in the specification and throughout the prosecution history. She points to, not just in the specification, and Judge Moore, you pointed to a statement where she said that photographic printing was far superior to ink printing. So she's creating a contrast here. She's saying there are two different types of prints, photographic prints and there are ink prints. So she distinguished the two and she focused her invention on the former and distinguished and then disavowed the latter. She could not have been more clear. This case is virtually identical to this court's decision in Simon. It's virtually identical to this court's decision in the Honeywell case, where the patentee first set up a distinction between two different types of prior art system and the claimed invented system, then disparaged the prior art system in contravention to the claimed system, and then finally, in the Simon case, disavowed the use of the prior art system. Here, the patentee did precisely that. She disparaged ink printing. She disparaged ink prints. And it wasn't based on the volume. The volume went to the cost effectiveness, perhaps, but the volume did not address the quality, which was the key point of distinction. And Mr. Blumenfeld explained. Of course, the claims don't say a print of the highest quality. You're correct, Your Honor, they do not. But that was the distinction that the patentee created. Photographic prints, as the patentee described and claimed them in the written description, were of a very high quality, and all we know is that they were of a higher quality than the ink prints. How do we know that? Because that's what the specification says. Any questions? Okay, thank you, Mr. Weaver. Thank you, Your Honor. Mr. Blumenfeld, do you see the issue that's troubling us? I do, I do. Just a few points on rebuttal here. First off, Mr. Weaver pointed to the example of a National Geographic reference. I don't know the ins and outs of National Geographic, but I would assume they print more than one. I would assume they print in very high volumes, and that's the point is that they can make thousands of them at a time, and then it becomes cost-efficient to make that. And also, I don't think the National Geographic reference itself would make a good floor tile. There has to be other things added to the print in order to do that. But the point is, it is efficient for them to do it because they're doing so many at a time. And I think— You already mentioned the idea of post-filing improvements, which I think you touched upon in your brief. Yes, the after-arising technology doctrine. After-arising technology. We don't dispute, as Mr. Weaver says, that ink printing was around before 1995, but we are of the opinion that ink printing has improved, and I believe that the doctrine does stand for not only technologies that didn't exist and then come into the fold later and later after the patent is issued, but also— If you hadn't poured cold water all over the ink, it's a mixed metaphor. In the specification, perhaps the argument would have a little more cogency. Well, at the time— And you're not arguing equivalence. You're arguing what the claim means. No, sir, not doctrinal equivalence, but what the claim means. And it's our position that while the statements talk about some of the then-shortcomings, those shortcomings then disappear because there are advances in technology, as we see every day, and ink prints have become— Back then, when the patentee was actually making this product, she had—I'm not quite sure, but it's a big old printer, and it takes a whole lot of money, and it's very, very difficult, and a lot of time. Now you could hit print right now, Judge Moore, and I'm sure you would print— If you were looking at a picture, you would print out a picture on an inkjet printer made of ink, so it's a whole lot easier to do that. And the doctrine of after-arising technology, I believe the case we cited is Johnson v. Johnston, and that I believe it stands for the fact that not just new technology, but technology that did exist but then starts to predominate later is covered within the scope of the claims. And the other thing I wanted to say is that Mr. Weaver talked about the PsyMed case, and I believe that case is distinguishable because in PsyMed, you have two structures that are disclosed, and then one is disparaged, and then the other one is claimed. However, that's not the case here because while there may be two types of printing that are disclosed, and then you have one type that is seemingly disparaged, albeit in a limited fashion with some qualifications, then both types are claimed because a graphic print encompasses all types of prints, and I think it's very clear that she is trying to do that because if she meant to say photographic prints all the time, then she would have said that, but that's not what Claim 21 says. It says graphic prints, and there's some discussion in the file history when they're talking about, I believe it's the Travis reference, and the patentee had a difficult time getting this patent over the Travis reference, and it's very clear, I believe it's on page 944 of the record, that Travis is an ink-printed product, and it is called graphic prints, and I think she probably could have got the patent very easily had she said, oh, but we don't mean ink prints, but that's not what she did. She had to go back and forth three or four times, and never did she make that distinction because that's not the right distinction because ink prints are covered, and in Travis, it's very clear that it talks about ink prints, and they call it graphic prints, and she uses the same term, graphic prints, in order to encompass all types of printing, including ink printing. Any more questions? Thank you. Okay, thank you, Mr. Blumenfeld, Mr. Blumen. Case is taken under submission.